

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | CRIMINAL ACTION NO.: 3:22-948-MGL-1 |
| § | |
| MARCHAS DONELL OUTEN, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
DENYING IN PART AND DEEMING AS MOOT IN PART
DEFENDANT'S MOTION TO SUPPRESS**

### I.     INTRODUCTION

Pending before the Court is Defendant Marchas Donell Outen's (Outen) motion to suppress.  Outen asks the Court to suppress evidence seized during a vehicle search conducted as a result of a January 22, 2022, traffic stop and a March 4, 2022, traffic stop, as well as incriminating statements made on those days.  Having carefully considered the motion, the response, the reply, the supplement, the oral argument, the record, and the applicable law, it is the judgment of the Court Outen's motion will be denied in part and deemed as moot in part.

### II.     FACTUAL AND PROCEDURAL HISTORY

The Court determines the following facts by a preponderance of the evidence.  *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

On the evening of January 22, 2022, after dark, Outen was the driver of a car in Columbia, South Carolina, which also had a passenger. Outen presents evidence that sunset that day was at 5:46 P.M.

Sometime between 6:15 P.M. and 6:35 P.M, City of Columbia Police Department Officer Michael Niscia (Niscia) saw a vehicle approaching from behind with a broken passenger-side headlight. Niscia testified that he wrote in the police report that he stopped the car around 6:15 P.M., but his body worn camera (BWC) indicates a time of 6:35 P.M. when he approached the car. The dash cam footage shows a time of 7:45 P.M., and thus appears unreliable.

As Niscia approached the vehicle, he states he smelled marijuana, and radioed dispatch to indicate the presence of drugs.

Niscia informed Outen that he pulled him over because his headlight was out and asked for documentation. When a backup officer arrived, Niscia asked Outen to exit the vehicle. Niscia explained he smelled marijuana and asked if there were any drugs or weapons in the vehicle. Outen told him he had a blunt in his pocket and a gun under the driver's seat. Niscia ultimately recovered a Glock 9mm Handgun from the vehicle and marijuana from Outen's pocket.

Before leaving the scene, Niscia captured the vehicle's headlights on his BWC. Niscia testified he believes the passenger-side headlight was completely burnt out, although the yellow daytime running light, which was much dimmer, may have still been working. From the picture, the Court observes the driver-side light looks significantly brighter and emits a whiter light than the passenger-side light.

A grand jury thereafter indicted Outen of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and (e). After Outen filed this motion to suppress, the

government responded and Outen replied.  The Court subsequently held a hearing, at which Niscia testified.  Outen declined to call any witnesses.

After hearing Niscia's testimony and argument from the government and Outen, the Court took the matter under advisement.  Outen subsequently filed a supplement.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

**III.     STANDARD OF REVIEW**

The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. Amend. IV.

Occupants of cars stopped by police are deemed seized for Fourth Amendment purposes and are entitled to challenge the constitutionality of the detention.  *Brendlin v. California*, 551 U.S. 249, 251 (2007).  Therefore, the stop must "not be unreasonable under the circumstances."  *Whren v. United States*, 517 U.S. 806, 810 (1996) (internal quotation marks omitted).

"[A] stop must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct."  *United States v. Wilson*, 205 F.3d 720, 723 (4th Cir. 2000) (internal citation omitted) (internal quotation mark omitted).

The Court must suppress evidence obtained as a result of an unconstitutional seizure.  *See Brendlin*, 551 U.S. at 251 (remanding state supreme court decision that denied suppression of evidence because it incorrectly determined defendant-passenger had not been seized for Fourth Amendment purposes during a stop).

## IV.     DISCUSSION AND ANALYSIS

As an initial matter, the government indicates it has no plans to introduce any evidence relating to the March 4, 2022, traffic stop, nor any incriminating statements Outen made on January 22, 2022.  Accordingly, the Court will deem Outen's arguments related to that evidence as moot.

Outen argues Niscia lacked probable cause to stop the vehicle, and thus evidence recovered as a result of the stop should be suppressed.  The government insists Niscia properly stopped the vehicle due to the broken headlight.

As relevant here, South Carolina Code Annotated § 56-5-4490 provides that "[e]very motor vehicle other than a motorcycle or motor-driven cycle shall be equipped with at least two head lamps with at least one on each side of the front of the motor vehicle. Such head lamps shall comply with the requirements and limitations set forth in this article."

Section 4770, in turn, sets forth required capabilities for the headlamps.  In relevant part, it provides:

> [T]he head lamps . . . on motor vehicles other than motorcycles or motor-driven cycles shall be so arranged that the driver may select at will between distributions of light projected to different elevations and may be so arranged that such selection can be made automatically, subject to the following limitations:
>
> (1) There shall be an uppermost distribution of light or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of at least three hundred and fifty feet ahead for all conditions of loading;
>
> (2) There shall be a lowermost distribution of light or composite beam so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least one hundred feet ahead, and on a straight level road under any condition of loading none of the high-intensity portion of the beam shall be directed so as to strike the eyes of an approaching driver[.]

The law further states that

> Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in Section 56-5-4450, the driver

3:22-cr-00948-MGL     Date Filed 05/31/23     Entry Number 59     Page 5 of 9

> shall use a distribution of light or composite beam directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, subject to . . . requirements and limitations [that the statute goes on to list.]

*Id.* § 56-5-4780.

In turn, Section 56-5-4450 states,

> Every vehicle upon a street or highway within this State shall display lighted lamps and illuminating devices, excluding parking lights, from a half hour after sunset to a half hour before sunrise, and at any other time when windshield wipers are in use as a result of rain, sleet, or snow, or when inclement weather or environmental factors severely reduce the ability to clearly discern persons and vehicles on the street or highway at a distance of five hundred feet ahead . . .

Finally, South Carolina law contains a general provision providing

> [i]t shall be unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such an unsafe condition as to endanger any person or property or which does not contain those parts or is not at all times equipped with lights, brakes, steering and other equipment in proper condition and adjustment as required in this article or which is equipped in any manner in violation of this article or for any person to do any act forbidden or fail to perform any act required under this article.

*Id.* § 56-5-4410.

Outen contends that together, these provisions fail to require two working headlights. Focusing on the use of the word "composite" in Section 56-5-4780, he insists South Carolina requires only that the total light omitted by the headlights is adequate for the driver to see a sufficient distance in front of him. The perspective of other drivers, he posits, is irrelevant under South Carolina law.

The government disagrees, maintaining that two working headlights are required. In the alternative, it contends that even if South Carolina fails to strictly require two headlights, Niscia reasonably believed Outen's vehicle posed a safety risk in violation of the law.

5

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (internal citation omitted). "[R]easonable mistakes of law, like those of fact, would justify certificates of probable cause[.]" *Heien v. North Carolina*, 574 U.S. 54, 62 (2014).

"To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* at 60–61 (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)).

"Under *Heien*, an officer's mistake of law may be reasonable if the law is ambiguous, such that reasonable minds could differ on the interpretation, or if it has never been previously construed by the relevant courts." *United States v. Coleman*, 18 F.4th 131, 140 n.4 (4th Cir. 2021).

Outen maintains that Section 56-5-4780 is unambiguous. But, there are also other statutes at issue in this matter. The Court must, therefore, determine whether the statutory scheme—in other words, the interplay among the various statutory provisions—is ambiguous. The Court determines that it is.

There is limited caselaw construing the relevant statutes as to this issue. First, in *State v. Jihad*, 536 S.E.2d 79, 81–82 (S.C. Ct. App. 2000), *reversed on other grounds by* 553 S.E.2d 249 (S.C. 2001), the South Carolina Court of Appeals contrasted the headlight provisions in Section 56-5-4490 with the brake light statutes. The Court reasoned Section 56-5-4490 "explicitly states that each vehicle 'shall be equipped *with at least two* head lamps,' . . . [I]f the legislature had intended to require more than one working stop lamp, it would have expressly stated its intention in the statutory language . . . as it so clearly did in § 56–5–4490[.]" *Id.* It thus held a vehicle needed only one working brake light. *Id.* at 82.

6

The South Carolina Supreme Court ultimately reversed, determining the brake light statutes required all brake lights on a vehicle to be functional. In other words, if a car is equipped with two brake lights, the driver must keep two brake lights in working order. 553 S.E.2d at 251. The Supreme Court failed to discuss Section 56-5-4490. But, the Supreme Court's holding appears to support, rather than undermine, the Court of Appeals' interpretation of Section 56-5-4490.

To the extent the *Jihad* opinions provide some guidance, they appear to support the government's contentions.

Similarly, in *Carter v. R.L. Jordan Oil Co.*, 365 S.E.2d 324, 330 (S.C. Ct. App. 1988), *reversed on other grounds*, 385 S.E.2d 820 (S.C. 1989) (per curiam), the South Carolina Court of Appeals stated, without much discussion, that "before [a driver] operates [a car] upon the highway, he has a duty to exercise reasonable care to see that the vehicle is in such safe mechanical condition as not to endanger any person or property." (citing Sections 56–5–4410, 56–5–5310). The Court of Appeals went on to reason that "[t]o fulfill this duty, he must make reasonable inspection of the vehicle to discover conditions that present an unreasonable risk of harm to others[.]" *Id.*

Again, the Supreme Court reversed, this time in a per curiam opinion that failed to discuss Section 56-5-4410. 385 S.E.2d at 820. It held that the appellate court erred its holding that a plaintiff's witness failed to testify as to pre-trip inspection practices of defendant's employees, and as a result the issue of negligence should have been presented to the jury. *Id.* As with *Jihad*, the Court determines that to the extent the *Carter* opinions provide guidance, they support the government's interpretation of the statutory scheme.

The Court holds that the statutory scheme is ambiguous, considering the unclear and at times apparently contradictory interaction between the relevant provisions. Moreover, given the limited and largely unhelpful discussion of the statutory scheme by South Carolina appellate

courts, particularly the Supreme Court, the Court determines those decisions failed to instruct Niscia.

Niscia's interpretation of the law was reasonable. Common sense instructs that headlights serve dual purposes: first, to illuminate the road in front of the driver so that he can see any hazards, and second, to illuminate the car itself so oncoming traffic can be aware of its surroundings. In the dash camera video, it is dark, and headlights are necessary to adequately see oncoming traffic.

This is true whether it was twenty-nine minutes past sunset, as estimated in the police report, or forty-nine minutes past sunset, as indicated on Niscia's BWC. First, the time listed in the police report was an estimate. Based on the evidence the Court finds it likely it was at least thirty minutes past sunset when Niscia pulled Outen over. In other words, it is likely that Niscia's estimate rounded down from a time more than a half-hour after sunset.

Second, although Section 56-5-4450 requires use of headlights thirty minutes after sunset, such required use is not limited to that time. What matters is that it was dark outside, and Niscia reasonably believed two headlights were needed for safety of vehicles on the road. Indeed, in the dash camera footage, until the oncoming traffic neared the camera, the headlights are the only visible part of the vehicles.

Niscia reasonably believed that Outen's vehicle posed a threat to the safety of Outen, his passenger, and other drivers. Even if Outen could see perfectly for a safe distance in front of him, his car was improperly illuminated from the perspective of other drivers.

Life experience teaches us that a single headlight could mislead oncoming drivers as to the size, type, and relative location of Outen's vehicle, *i.e.*, it could appear to be a motorcycle or appear to be taking up only one side of the lane. *See* Section 56-5-4490 ("Every motor vehicle other than a motorcycle or motor-driven cycle shall be equipped with at least two head lamps[.]").

Even if the Court agreed with Outen that the use of the word "composite" in Section 56-5-4780 means that section contemplated only the total light emitted, Section 56-5-4410 requires that vehicles must be kept in a condition that renders it safe for "any person or property[,]" including other cars and drivers.

Thus, even if Niscia's understanding of South Carolina law was mistaken, it was reasonably supported by the ambiguous statutory scheme. He therefore had probable cause to stop Outen. Accordingly, the Court must deny the motion to suppress as to the evidence seized at the January 22, 2022, traffic stop. Because the Court determines Niscia had probable cause, it need not delve deeper into interpretation of the statutory scheme.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Outen's motion to suppress, ECF No. 36, is **DENIED IN PART AND DEEMED AS MOOT IN PART**.

**IT IS SO ORDERED.**

Signed this 31st day of May, 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
